Milo Kelly et al., Plaintiffs in Error *v.* Daniel Chapman, Administrator, &c., Defendant in Error.

ERROR TO LEE.

In a proceeding for a mechanic's lien, it is the duty of the party who complains of the verdict, to preserve the evidence in the record, either by a bill of exceptions or a certificate of the judge.

Although it might be proper, in this proceeding, to order the sale to be made by a master or a commissioner, yet the same result is produced by the issuing of a special execution to the sheriff. The return of that officer would be a report of the sale, which, if not made in pursuance of law, might be set aside, and another sale ordered.

The decree need not direct to whom the surplus money, if any, arising from the sale should be paid; that may remain subject to a future order of the court.

The rights of a person who was not made a party, are not affected by the decree or any proceedings under it.

This was a proceeding for the enforcing of a mechanic's lien, commenced by Chapman in the Ogle Circuit Court, and taken by the change of venue to Lee county.

The petition avers, that Chapman made a verbal contract with Milo Kelly and one Harvey Colburn, the then owners of a certain tract or lot of land in Ogle county, describing it, to perform labor and work as a mechanic and millwright, in the erection of a flouring-mill; that he commenced work, and labored

for 208 days, for which the defendants promised to pay what the work was reasonably worth — no particular amount of work agreed to be done; avers, that work was reasonably worth $520; a balance of $397.76 was found due on a settlement, and note given as evidence of indebtedness. Prayer for the benefit of a mechanic's lien against the land, &c., and for special execution.

Moses Nettleton was made a party to the petition, it having been made to appear to the court that he was interested, as a mortgagee of the premises.

Kelly answered the petition, denying that he bargained with Chapman; and avers, that he had no interest until after the work had been commenced, &c.

The answer of Nettleton sets up two mortgages on the premises, which he holds as assignee, and that the mortgagors were owners at the time of the execution of the mortgages. Replications were filed to all the answers.

This cause was tried at August term, 1847, of the Lee Circuit Court, by a jury, and a verdict found in favor of the petitioner for $391.61. The lien was ordered to attach, as prayed for, and a special execution directed to issue for the sale of the premises. The surplus, if any, after satisfaction of judgment and costs, to be paid to the parties who may be entitled to the same. It was further ordered, that Moses Nettleton, upon payment of costs, go hence without day.

The respondents to the petition sued out this writ of error.

E. S. LELAND, for plaintiffs in error.

GLOVER & COOK, for defendant in error.

CATON, J. Chapman filed his bill against Kelly and Colburn to enforce a mechanic's lien under our statute. Subsequently Moses Nettleton appeared in court and filed his petition to be made a defendant in the suit, showing that he had an interest in the premises as the assignee of two mortgages which were older incumbrances than the complainant's lien. By order of the court, the petition was so amended as to make him a party, and

he answered setting up his mortgages, as in his petition, though more circumstantially. Kelly also answered, traversing a part of the statements of the bill, and also setting up new matter, as payment, set-off, &c. He also states, in his answer, that he had executed to one Williams a mortgage upon the premises. As to Colburn, the bill was taken as confessed; and replications were filed to the answers of Nettleton and Kelly. At the August term the case was tried by a jury, who found the issues for the plaintiff and assessed his damages, for which a decree was entered directing a special execution to be issued for the sale of the premises, to satisfy the amount found due the plaintiff and the costs, and that the residue of the proceeds of the sale should "be paid to the parties who may be entitled to the same, and it is further ordered that the said Moses Nettleton, upon payment of costs, go hence without day."

Several objections have been urged to the judgment or decree in this case. The first which I will notice is, that the record contains no evidence to support it, and that it is uncertain what issues the jury have passed upon. The testimony was delivered in open court before the jury, and from it the jury have passed upon the issues submitted to them, and when that is the case the evidence could only appear upon the record by a bill of exceptions, or a certificate of the judge, as in an ordinary jury trial, and it is the duty of the party who complains of the verdict to preserve the evidence in the record, either by a bill of exceptions or a certificate of the judge, so that he might show to this court that the verdict is not supported by the evidence. This is the case whether we regard the trial as in an action at law or a feigned issue out of chancery. The verdict stands in place of the evidence. By it the facts are found upon which it is the duty of the court to pronounce the judgment of the law. The statute itself determines what the issues were which were submitted to, and determined by, the jury. The 7th section of chapter 65, Rev. Stat., under which this suit was instituted, provides as follows: "Defendants in proceedings under the provisions of this chapter shall answer the bill or petition under oath, and the plaintiff shall except or reply to the answer as though the proceeding was in chancery; the answer shall be regarded as the

Kelly et al. *v.* Chapman.

plea of the defendant, and, by the replication thereto, an issue or issues shall be formed which shall be tried by the court, or by a jury under the direction of the court, as the court may direct or the parties agree." This statute does not contemplate a feigned issue, according to the English chancery practice when questions arising in a chancery suit are tried by a jury, although, when the issues formed by these pleadings are complicated, it may be proper to simplify them by stating them to the jury in the form of simple interrogatories. In the statute itself, however, there is neither doubt nor ambiguity, nor in it is there any thing unusual, especially so far as the formation of the issues is concerned. By the replications the entire answers were put in issue, whether they contained denials of the averments of the bill, or new matter set up by the defendants in avoidance or defence. To maintain the issues on the part of the plaintiff he had to substantiate the averments of his bill either by the admissions of the answers or by testimony. When that was done it became necessary for each of the defendants to establish the defence set up in their answers respectively. The verdict shows that the plaintiff did establish his case, and that the defendants failed to establish theirs. Had the defendant Nettleton proved the existence of the mortgages as set up in his answer, and this proof was not rebutted by evidence on the part of the plaintiff, the jury never could have rendered the verdict which they did, or, if they had, upon application the court would have set it aside in a moment. But, so far from complaining of the verdict, neither of the defendants asked for a new trial, but acquiesced in it without a struggle. It is now too late to complain that the verdict did not establish the true facts. Had the verdict established the truth of Nettleton's answer, then other questions would have arisen which should have been determined before a final judgment or decree could have been rendered, such as the value of the improvement, and the value of the land without the improvement, so that the court could have distributed the proceeds of the sale between him and the plaintiff, according to the directions of the statute, for each would have had a preference to a portion. But the jury having found against Nettleton, none of these more complicated questions of fact arose.

45*

It was further objected that no commissioner was appointed to make sale of the land, nor was the Master ordered to make the sale, nor was a report of the sale ordered to be made, nor has there been any such report or approval thereof. It would undoubtedly have been proper for the court to have ordered the sale to be made by the Master, or a commissioner might have been appointed for that purpose, but the same result was produced by the issuing of a special execution, which was done. That, of necessity, was directed to the sheriff, who was thereby commanded to sell the premises, and his return to the execution would be nothing less than a report of the sale, which, if not made in pursuance of law, might be set aside by the court, and another sale ordered. It is true the decree does not determine to whom the surplus, if any, should be paid, nor was that indispensable. That surplus would still remain under the control of the court, and might, by a subsequent order, be directed to be paid over to whoever should show himself to be entitled to it. It is by no means uncommon for the Court of Chancery to have funds subject to its orders, to be made on the application of parties interested.

Nor should the decree be reversed because Williams, to whom Kelly, in his answer, avers he had executed a mortgage subsequent to the date when the complainant's lien took effect, was not made a party. It would have been proper, after the answer with this averment was filed, to have made Williams a party; but, instead of doing so, the complainant chose to take issue upon the fact of the execution of such a mortgage, and the jury have found against its existence. Had they found otherwise, it perhaps would have been indispensable to have brought him in; but that finding certainly is sufficient to prevent the defendants before the court from founding a complaint upon that averment, which was thus found to be untrue. The rights of Williams, who was not made a party, are not affected by the decree or any proceedings under it, if in truth he has any such rights. He may still proceed to foreclose his mortgage without injury by this proceeding.

The decree is not drawn with that formal precision which is desirable, but we think it substantially sufficient. If it were not,

this court would make the necessary decree, as the record shows all that is necessary to warrant a final decree in the case. The conclusion of the order, " that the said Moses Nettleton, upon payment of costs, go hence without day," was particularly objected to, as determining nothing definitely as to him. The jury had found that he was not entitled to the relief which he had sought by being made a party to the suit; and it was proper, therefore, that he should be dismissed from the court without such or any relief, and that he should pay the costs which he had made by his interference. And such was the result of the order which was made by the court. A previous part of the decree had ordered the premises to be sold, and that out of the proceeds the plaintiff's damages and costs should be paid. This, taken in connection with the order in relation to Nettleton, shows that the costs which the other defendants were liable to pay were meant. A proper understanding of the decree requires that the whole should be taken together.

Some other objections, of less importance, were made, which we do not think it necessary to notice particularly. Upon the whole, we are of opinion that the decree should be affirmed.

*Decree affirmed.*